Mr. Hall, good morning. You may proceed. We know that you were appointed under the Criminal Justice Act. I was, Your Honor. It turned out to be my last appointment because I've been around so long they wanted younger people in to do it. But it was my pleasure to represent her in this case. This is the only Delta Blues case to go to trial out of the 70 defendants. Well, we appreciate your willingness to accept the assignment. Well, I won't comment on their not having you up anymore. I guess you'll be here on other cases. Well, one administrative thing I wanted to point out is on our brief it says Judge Moody is the judge. Well, his son was confirmed two weeks ago. I read that with great interest. You need to say senior on the front. I read that with great interest. And the District Court's website showed him as of Monday. And also there's a glaring typo on the map. I thought I was being so cute by including this map in color. But up here it says on the upper right. It should say upper left. How that typo got by me, I'll never know. But the map shows the route in the lower right corner is where the Mississippi River Bridge is. And then they follow 49 around to the upper left. Marlene Cab was a police officer for 27 years in Helena, West Helena. And some of the time she was with Phillips County as a narcotics officer. And she worked despite her injuries. If you see the videotape, she's missing some teeth. She testified that she had to wrestle suspects. She got punched in the face. That's how she lost her teeth. But she stayed on the job until this case got her arrested. And the case was under investigation for probably a year. There were a couple of wiretaps. The government had the information they needed about the place where the drug trafficking was going on. And they had pole cameras set up. They ran wiretaps. And then while they were finalizing the details about how to arrest all these people and get them indicted, they enlisted Mr. Coleman, C.C. is referred to in the government's brief. He was a well-known local criminal. They ended up paying him $50,000 to be the snitch in this case. And they decided, well, let's see what else we could get. So they enlisted him to call the police officers and see what they could get. None of the police officers saved one. One was somehow involved in the drug trafficking. And he was charged in that main indictment. But the other four officers were charged completely separate indictments, except my client was indicted with Mr. Rogers. And they were literally collateral to the original investigation. The investigation was complete by 1st of September, and then they started on this part in early September while they were getting the mechanics together about how to make the arrests go down. They literally had 700 police officers come in to sweep into town to arrest these 70 people in the dark of night. They used the National Guard Armory as a booking place. It was a fiasco that day to do it. And the police officers testified at trial. We came over there at midnight getting ready to go in and arrest people at 5 a.m. They spent the night out getting ready for it. But in C.C.'s case, what he did was he went to the police station and the testimony in this is really clear. He asked about, is there a warrant out for my arrest? And he talked to Ms. Cab, a lieutenant at the time, she'd been promoted, and talked to her about it. And she said, well, I don't know. And then she put him off to somebody in dispatch who checked the computer and said, well, we don't see any warrant for you. He thought it was a failure to pay child support, which led to his not having a valid driver's license. But nevertheless, his license was okay, but his excuse was, the police bother me when I'm going through town, can you follow me? She asked him directly at one time, and I think this is on one of the videos of one of the recordings, have you cleaned up your act? Have you stopped being the criminal that you are? And this guy had a huge list of prior offenses. Was he sort of a folk hero there or something? I don't think so. I mean, he seems to be getting by with it. Well, the irony of all this is that everybody who gets arrested in that county, if it's not for aggravated robbery or murder, can plead it out to, like, five years suspended. It was amazing to me. One of his prior convictions was for arson. He threw a firebomb at his girlfriend's front door, set the house on fire. Luckily, the fire didn't do a whole lot of damage, but he was convicted of arson. He constantly pled to probation over and over and over again. But that's not limited to him. That was sort of how it worked over there, unless you committed a really bad crime, in which case then you might have a trial and you might get real jail time. But he was able to dodge the bullet on so many things and, in fact, committed a crime after he became the government's snitch. While the indictment was pending, he gets arrested against my client. He gets arrested in Phillips County possessing a stolen trailer with two commercial lawnmowers on it that was taken right across the river in Mississippi. And I went to Mississippi and got the prior arrest, or that arrest. It wasn't a conviction at that point, and the government agreed we could cross-examine him on it. But they had the videos, and they thought that's all they really needed was the video of the car in transit, the airplane overhead, the videos of him recording her. And when the money is actually transferred, he asks her to take it, and she won't take it. And then finally he just sort of throws it at her and said, well, give this to Chrissy. Well, Chrissy's a mutual friend of theirs. Chrissy was a one-time girlfriend of his who he may or may not have owed money to, but he said, well, give it to Chrissy. And she did, in fact, give it to Chrissy. Chrissy testified to that. But it was not in exchange for what it is that she was filing him for. She said, I was filing him because he said he was being hassled by the police. She was not in tandem like two vehicles driving from the Mexican border into the country, one is a bait car and one's following, trying to mislead the police as to what's what. She was following him and said, well, cops get behind me and they pull me over. Okay, well, I'll follow you through town. Don't exceed the speed limit. Do what you're supposed to do and go on about your business. Well, wasn't there some evidence that she knew that he was transporting cocaine? He said, I had a huge amount of cocaine this time. He said that once. He did, in fact, say that, but she said, I thought he was kidding. Because she prior asked him, have you cleaned up your act? Do you stop doing drugs? And he said yes. And that part's not in the suit, but they have him on video saying that. Yes, she said that. Sort of a jury question as to who to believe in something like that. Correct. But even so, was she still in possession of the drugs for constructive possession? That's a more interesting argument, in my opinion. There is. He did drop the one line that's caught on video saying that he had drugs. So why isn't the, let's assume that she knew or that the jury believed that she knew. Why isn't her escorting him through town for the purpose of protecting him from other officers and sort of being right behind him, why isn't that enough to create possession on her part? Because she didn't know exactly what he had. She had no right to control his car. Let's assume she knew it was cocaine because he said it was cocaine. She didn't have any way to control his car. She was just tailing him. She didn't have access to the car. She didn't know exactly what he had, how much he had. He just mentioned that he was loaded down. At one time he just said, I'm loaded down. He didn't say it was drugs. I'm just loaded down. He didn't, he should have been more explicit since it was all being recorded and it was for the benefit of the recording he was saying it. But he did one time, I agree, he said cocaine. I had a load of cocaine. But he never said how much, just a load. And her testimony was, well, he was into racing motorcycles, which was true. And he had motorcycle parts in the truck. It was in the back of a pickup truck. But, again, there was no drugs. This is a case about her having control over drugs that don't even exist because there never was any. It's not a crime of impossibility, but how can you? Because they charge it as attempted, right? Correct. So there doesn't have to be drugs, does there? Doesn't have to be drugs, but, again, there never was any drugs. And he just said of the two trips, one time that he said he had cocaine. But previously had said, I cleaned up my act, I'm not in drugs anymore. And then she said, her testimony was, I thought he was kidding. Well, again, that's a jury question. But he did undisputedly say, because they had him on a body mic the first time when he went into the police station, and then it malfunctioned and they had to go into the bathroom, a state police officer, follow him in there to get the recording off of him and get it going again. Is your argument that there wasn't sufficient evidence for her to know that there were drugs in the car? Or is your argument that even if she knew, there wasn't sufficient evidence that she had possession? It's really both, but I stress the latter, that he was not explicitly clear that he had it, but even if you assume that he had it, was her actions enough to have any control over his car? She was just tailing him from one side of town to the other, just so another police officer wouldn't pull in, because he said, I'm being hassled by other police officers. And that corroborates that he's being hassled because of being pulled over for not having a license, which turned out not to be true. And the government tried to stress at trial, well, she's the one that checked, and the testimony was, no, she didn't even check. She just passed it off to somebody else to check. Excuse me, how long did this whole operation take? The parts on her were September 9th of 2011 and September 26th of 2011. But they were doing police officers in general through the month of September. So there were three other police officers, too. And they pled. And as a sidelight for this, the government relied on the 10-year imposition of a sentence for the conspiracy when they detained all these police officers pending trial. After the first three pled, and I got their plea agreements, I imposed upon the courts that these people pled to 18 to 24-month sentences. That sort of sets the bar now. I think she should be released pending trial. She got released pending trial after serving seven months. Then she was out until the trial, and then when the jury convicted her, she was taken back into custody. She served 22 months on the 30-month sentence. As of now, the BOP website shows her being released in July, and it might be a little early. She rejected halfway house because her family couldn't come and visit her anyway. She said, I'll just stay where I am. So all these police officers are done with the police, no doubt. Correct. All four of them. Well, there's a fifth one who was involved in the conspiracy itself. He was actually handling drugs when they got him. But the other four were, again, the main Delta Blues investigation was done, and that was an indictment that ends in 209. And then they added that that was done by the 1st of September. While they were getting the paperwork together, amassing the paper for the wiretaps to tell everybody, making copies of everything, then they continued on to see what they would get on the police officers, and that was in September of 2011. So none of the police officers except that one were a focus. That just happened. They were never a focus. They had nothing on Marlene Cab before this started. They had nothing on the other three before it started. On your possession argument, did you look at the government cited the McCranny case? Did you look at that? I did, but I can't specifically recall it. My reading of that is that we've sort of said evidence of concerted action plus some evidence of dominion and control is going to be sufficient to show possession. And here, don't we have that? We certainly have concerted action, and at least with her escorting to protect from other police officers, that sort of thing, isn't that enough dominion and control to show possession? I agree. She was following him so others wouldn't hassle him, his word. But if somebody was going to legitimately arrest him, she would have let him, I'm sure. But that never came up because her following him was because he would be arbitrarily pulled over for no reason. That was his claim. She wasn't running interference like there was a case out of Little Rock that's coming on its way up here where a police officer was tailing a thousand-pound load, and he knew exactly what it was, and in fact passed other cars going in the other direction to an emergency, ignored an emergency to keep the tail going. But that's back to your argument that she didn't know, and to me that's a fact question for the jury. But it doesn't rise to dominion and control. He had dominion and control. She was just tailing the car. And if somebody wanted to pull her over, she wasn't going to stop them, but that was just to create an illusion, I guess. On the extortion count, there is no proof that she asked for money. She didn't do anything to ask for the money. He volunteered it, and she rejected it. On the video, the first video, she's rejecting it outright, and then he just sort of tosses it at her and said, we'll split this with Chrissy or give it to Chrissy. And she did, in fact, give it to Chrissy because Chrissy was his girlfriend and Marlene knew Chrissy. Sorry, Ms. Cabb knew Chrissy. And Chrissy testified for the government at this case, and I cross-examined her about that. And the same was on the 9th, and then on the 26th, again, she rejected it and he threw it into the car, and he took off. And the government's own brief said between when he tossed it and when he was driving was 10 seconds. She didn't ask for the money ever. He just gave it to her, and she regretfully kept it, but they had an ongoing personal relationship, even though she'd arrested him before. Not as many times, not all his arrests, but she'd arrested him before. Thank you. Very well. Mr. McRae? Mr. McRae? May it please the Court. My name is Cameron McRae, and I represent the athlete of the United States of America in this case. And we would submit that the evidence presented at trial was sufficient both on the drug count and also on the extortion count. First and foremost, I'd like to point the Court to something that has not been discussed yet this morning. After Ms. Cabb was arrested on October 11th, she gave a confession to officers that she accepted $500 on two separate occasions for escorting Mr. Coleman through trial, excuse me, through Helena, West Helena. That confession, standing alone, is sufficient to prove the elements in this particular case. Judge Wender, as you were speaking about earlier concerning the question about whether she, the McCraney case with the joint action and the element of dominion and control, here I would say this case is certainly one of dominion and control. Ms. Cabb is in a marked police car. What about Wilson where we said if you don't have access to the car and I don't think there's any evidence she had the key to the car or had been inside the car, that sort of thing? Absolutely, Your Honor. I do understand where Wilson fits in, but here the difference would be that this is a police officer who is in a marked car, and she also has either a reasonable belief or actually probable cause to believe that there's drugs in that car. So she doesn't need a key. That's fine. Right. She doesn't need a key. But how does she have dominion and control? Because she can stop that car without a key, she's absolutely in control of the situation. If she was to believe that there was an officer who would stop the car, she's there, first of all, to give a bubble of protection to the car so it's not stopped. Her mere presence dissuades other officers. But she's also controlling him because she has the authority to stop the car using her authority as an officer. Here she's using it for an illicit purpose, but if she was to use it for a legitimate purpose, there is probable cause based on the statements that Mr. Coleman made to her that there are drugs in this car. And that gives her access, that gives her dominion and control over the car. Is there any evidence that she exercised dominion and control, that she said, go this way, go that way, or stop? There's testimony that she told Mr. Coleman to drive slowly and to stay within the speed limit and to use his seat belt. And there she was trying to exercise control to ensure that there was not a traffic violation. It certainly aided and abetted his safe travels, I guess. Yes, Your Honor, that's correct. And that actually brings up a question I had. Aiding and abetting wasn't charged. It was charged, but I believe it wasn't submitted to the jury on an aiding and abetting instruction. It seems to me that would have made life a lot easier, wouldn't it? It certainly would, but I believe the evidence here, though, still is sufficient to show dominion and control. Or conspiracy. Conspiracy wasn't charged either. That's correct, Your Honor. While I believe those things would make it an easier case, I do believe, though, that this case is one that falls squarely within the dominion and control because this is an officer who's using her authority to protect drugs. And it's not a case as if there's a private citizen who doesn't have access to a vehicle or who doesn't have knowledge about what's in that vehicle. This is an officer with the authority and the power to search the car at any particular time. And that's even better than having a key because she can go anywhere in that car to find the drugs that she believes to be there. Well, I mean, does she really have the power to search the car at any time? Yes, Your Honor. There's a belief that there's drugs in the car, and that's more than enough under the Supreme Court precedent concerning automobile stops and traffic stops. And here she's happened to be a participant in the conspiracy to bring those drugs, but she has the knowledge that's sufficient to effect a stop on that car, and that gives her sufficient access to it. But there's no evidence she ever did that. Her testimony was that she searched the car after the first or second transport. Her evidence was that she searched the car. We dispute that, and we certainly don't want to speak out of both sides of our mouths, but her evidence was that she became a legitimate officer and that she exercised her authority to search the car after the transport was done. But we certainly dispute that. But I think it just goes to show that she certainly had the authority, and she knew that she had the authority to search that car. Are there any cases that are like this that deal with this constructive possession type? No, Your Honor. We've searched for cases, and so far we haven't found one that applies it in this particular circumstance. But in looking at the facts and also from a fundamental fairness standpoint where she's trying to claim that there's no access to the car, her mere presence there, her whole purpose is to provide protection to the car, and without her being there, there is no protection, and she has to exercise control over the car to provide her protection to Mr. Coleman and to the drugs that she believed to be in that car. Your Honor, concerning the extortion point, again, Ms. Cobb's confession again plays in. She admitted that she knew that she was receiving the $500 in exchange for escorting the car through West Helena. And the Supreme Court in Evans v. United States stated that the necessary elements to prove in this particular case are that she accepted a benefit that she was not entitled to receive by her office in exchange for either doing or not doing an official act. And here her confession meets that particular standard. And, Your Honors, in addition to Ms. Cobb's confession, there's also other evidence that was in the record that the jury considered. One, there was a comment that she made concerning a gentleman by the name of Dean Jackson. He's another officer who was corrupt and was a target during the Delta Blues investigation. He was an individual who was known to shake down drug dealers. There was a variety of different types of corruption schemes that were going on. There were dirty cops who were shaking down drug dealers and not bringing legitimate prosecutions. Then there were legitimate officers who were doing what Ms. Cobb was doing, which was protecting drug dealers from the police, either by giving them advance notice or by escorting them through town. And Ms. Cobb was warning Mr. Coleman about a particular dirty cop who was on patrol the day that the second escort occurred. What happened to the leadership of the police department? Your Honor, I'm not sure about the specific officers all involved, but I do know that quite a few law enforcement officers were removed. Delta Blues was a larger corruption in Helena, West Helena. There were issues concerning the police department, drug dealers, and the criminal justice system was a part of the problem is why it had to become federal because the state system was so corrupt. There certainly was an issue that was to be addressed. Your Honor, I'd also like to point out the whole reason that Ms. Cobb was involved in this case was because the initial target that Mr. Coleman was there to investigate, her co-defendant, Mr. Rogers, he referred Mr. Coleman to speak to Ms. Cobb, and that again speaks to her knowledge about why this was being done and what she was being paid to do. Ms. Cobb told the officer who took her confession that she was aware that the person who referred her had done previous escorts, and she assumed that he had been paid for doing that work. And so that again speaks to the extortion element in this particular case. And, Your Honor, just to summarize, concerning the possession, Ms. Cobb is an officer who is using her authority, exercising dominion and control for an illicit purpose. That meets the elements required for the attempt to possess with intent to distribute, and she also did that in exchange for a payment of $500 on each occasion. And so we would submit that the evidence presented at trial was more than sufficient to support both the conviction for the drugs and also for the extortion. And if the court has no further questions, I will take my seat. Very well. Thank you. I'll try to answer Judge Murphy's question, which is a good one. A new police chief came into town, and he knew there were some problems in the department, plus the city generally. And I don't remember whether he went to the FBI or the FBI came to him, but he was a new administration, and this Delta Blues investigation opened under a new chief, although the federal government controlled it. And when they actually did the arrest, they enlisted whole numbers of state officers as well, but it was an FBI investigation primarily. On the Wilson case, which Judge Grunder cited, in that case Wilson was convicted of possession or control over a vehicle that a guy pulled up outside. He was well known to be a drug dealer, and there were drugs in the house, but he wasn't in control of the drugs in the car that he did not go out to deal with. The car was pulled up outside, and everybody knew what was in the car because that's what he did for a living. But they said that wasn't what you guys said. That wasn't enough to convict him of what was in the car. Now, in the house, that's different, but in the car, no. There was one time I recall, now Mr. McCree brought it up, she looked in the vehicle and didn't see anything, and that was after the run was over. She looked in the car or his vehicle, didn't see anything, but didn't search it. She just looked in the window, didn't physically get into the car and look around. Your client was acquitted on a number of counts, was she not? She was acquitted of two money laundering counts on taking the money, and my argument to the jury was the statute doesn't make any sense to me, and if the jury instruction doesn't make any sense to you, then you can't convict her. And I think that's what they did. Maybe they found her guilty because of these other things, because she must be guilty of something. Well, misuse of a police car, but that's not true. But Jackson v. Virginia said that even a properly instructed jury makes mistakes, and that's what appellate courts are for. Right. But on the extortion, she rejected the money twice. I don't want it. And he said, well, give it to Chrissy. So she took it and gave it to Chrissy. And what about her confessions then? Well, confessions are confessions. A Little Rock police officer took her confession, and LRPD policy is you have to record the confessions. Arkansas law requires you don't have to, you should. But he said, well, I was doing it under the FBI's auspices, so we didn't record it. So there was no recordation of this confession, and we cross-examined about that. You know how that goes. Yes. Well, thank you, both sides, for the arguments. And the case is submitted. We will take it under consideration. We'll be in recess until 8.30 tomorrow morning. Thank you.